**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

GREGORIO CANO CERVANTES, *et al.*,

Petitioners,

v.

JOHN MATTOS, *et al.*,

Respondents.

Case No. 2:26-cv-01765-RFB-EJY

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioners'—Fernando Zuniga Escalante, Cristian Damian Valdez Garcia, Noel Armando Zelaya Aguillon, Edi Ramirez Hernandez, Gregorio Cano Cervantes, and William Alexander Ramos Grandaos—Joint Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241.[1] See generally Pet. for Writ of Habeas Corpus, ECF No. 1 [hereinafter, "Pet."]. For the following reasons, the Court grants the Petition.

## I. INTRODUCTION

Petitioners challenge the lawfulness of their ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). After preliminarily reviewing his petition, the Court ordered Respondents to make a "'a return certifying the true cause of detention' as to each Petitioner." Order to Show Cause, ECF No. 4 (June 11, 2026) [hereinafter, "OSC"]. In turn, Respondents invoked 8 U.S.C. § 1225(b)(2)(A) as their purported authority to detain Petitioners—specifically, pursuant to Federal Respondents' (a.k.a., "the government") novel statutory interpretation of this provision. See Fed. Resp'ts' Notice

[1] Petitioners Abraham Perez Martinez, Luis Miguel Rangel Rocha, and Yohangel Artosegui Garcia have since been dismissed from this action. See Order, ECF No. 15 (July 31, 2026).

Regarding Class Membership 3, ECF No. 7 (June 15, 2026) [hereinafter, "Opp'n"].[2] This Court is well acquainted with Federal Respondents' newfound interpretation and application of the Immigration and Nationality Act ("INA"), particularly in regards to § 1225(b)(2)(A), as the Court has repeatedly rejected it as unlawful.[3] See, e.g., Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, 2026 WL 879799, at *34–35 (D. Nev. Mar. 30, 2026) (collecting cases). Moreover, the government's statutory interpretation has recently been rejected by the Ninth Circuit and is unequivocally illegal within this circuit. See generally Rodriguez Vazquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. July 30, 2026).

As discussed below, Respondents have asserted a detention authority that is unlawful as applied to each and every Petitioner in this action. See generally id. Therefore, the Court finds Respondents have acted in violation of the INA, this Court's declaratory judgment/vacatur, and the law of this Circuit. In doing so, the government has utterly failed to answer this Court's order to provide a lawful basis for Petitioners' continued detention and failed to show it has afforded Petitioners the full suite of procedures they are owed as a matter of statute and corresponding regulations. On that basis, the Court finds the appropriate remedy in this case is Petitioners' immediate release from custody.

The Court does not reach the due process argument raised by Petitioners but reserves the right to rule upon this argument at a later date as may be necessary.

## II. CLASS MEMBERSHIP

Based on the Parties' undisputed factual allegations, and the evidence in the record, the Court finds that Petitioners are members of the Jacobo-Ramirez Class. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings);

---

[2] Respondent John Mattos, Warden of Nevada Southern Detention Center, filed a response to Petitioners' Petition for Writ of Habeas Corpus, asserting that he has no independent authority to release Petitioners and takes no position on the Petition's merits. See generally Facility Resp't's Resp., ECF No. 5 (June 15, 2026).

[3] On March 30, 2026, the Court issued a classwide judgment declaring the government's interpretation of § 1225(b)(2)(A) unlawful under the INA, because undocumented noncitizens like Petitioners, who are arrested by ICE officers in the interior of the country and alleged to have entered without inspection or parole, are subject to detention under § 1226(a) and its implementing regulations: 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. See Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *33 (D. Nev. Mar. 30, 2026).

see also Jacobo-Ramirez, 2026 WL 879799, at *4 (citation omitted) (defining the Jacobo-Ramirez Class).

First, Petitioner Valdez-Garcia undisputedly falls within the Jacobo-Ramirez Class. The Parties agree that he satisfies the criteria of class membership. See Pet. at 8–9; Opp'n at 3. The Court accepts their factual representations as undisputed and finds that Mr. Valdez-Garcia is a member of the Jacobo-Ramirez Class.

The only basis Federal Respondents provide for their contentions that Petitioners Cano Cervantes, Ramos Grandaos, Zuniga Escalante, Zelaya Aguillon are not class members is that each of these petitioners has had a bond hearing before an immigration judge. As this Court has previously explained, "[t]his argument is not well taken, as none of the criteria of class membership" hinge on bond hearings. See Order Granting Writ of Habeas Corpus at 3, Herrera v. Mullin, No. 2:26-cv-01526-RFB-EJY (D. Nev. July 20, 2026) (ECF No. 19) (citing Jacobo-Ramirez, 2026 WL 879799, at *4). Put differently, a noncitizen is not categorically beyond the Jacobo-Ramirez Class merely because they have been afforded a bond hearing. See Jacobo-Ramirez, 2026 WL879799, at *4 (citation omitted). Par for the course, Respondents fail to explain, or offer any support, for their claim that a bond hearing—which itself is unmoored from any established procedures, see *infra* Part II n.4—somehow places a noncitizen beyond the Jacobo-Ramirez Class. They offer no reasoning on this point. See generally Opp'n. They do not cite authorities to support their position. See generally id. And, as always, they fail to meaningfully engage with the class definition. See generally id.

To the contrary, each of these four petitioners *does* satisfy the class definition. Each is an undocumented noncitizen who was arrested and detained by ICE between the months of March and May 2026 and remains detained. See Pet. at 8–11. Second, they are in removal proceedings before the Las Vegas Immigration Court, *i.e.*, within the District of Nevada. See Opp'n, Ex. A, ECF No. 7-1 at 6 (Notice to Appear issued as to Mr. Cano Cervantes); Ex. D, ECF No. 7-4 at 7 (Notice to Appear issued as to Mr. Ramos Grandaos); Ex. E, ECF No. 7-5 at 59 (Order of the Immigration Judge as to Mr. Zuniga Escalante); Ex. G, ECF No. 7-7 at 5 (Notice to Appear issued as to Mr. Zelaya Aguillon). Third, DHS alleges that each of these petitioners entered the United

States without inspection, admission, or parole. See id., Ex. A, ECF No. 7-1 at 3 (Form I-213 issued as to Mr. Cano Cervantes); Ex. D, ECF No. 7-4 at 2 (Form I-213 issued as to Mr. Ramos Grandaos); Ex. E, ECF No. 7-5 at 2 (Form I-213 issued as to Mr. Zuniga Escalante); Ex. G, ECF No. 7-7 at 2 (Form I-213 issued as to Mr. Zelaya Aguillon). Fourth, Federal Respondents are detaining these petitioners under § 1225(b)(2)(A), and they do not assert that any of them are, or will be, subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Opp'n at 3. Fifth, these petitioners were most recently arrested well within the country's interior, not while arriving in the United States. See Pet. at 8, 9, 10, 11 (stating the date each of these four petitioners was arrested, as well as location—all were arrested *in Las Vegas*).

Federal Respondents also contend Petitioner Ramirez Hernandez is not a Class Member, based upon (1) a prior bond hearing, and (2) the IJ's finding the Petitioner was detained while "arriving." See Opp'n at 3. However, the Court again finds this argument misplaced and without authority. Based upon the record before it, the Court finds Petitioner Ramirez Hernandez too satisfies the class definition. Mr. Ramirez Hernandez is an undocumented noncitizen who was arrested and detained by ICE on April 7, 2026, and remains detained. See Pet. at 11. He is in removal proceedings before the Las Vegas Immigration Court, *i.e.*, within the District of Nevada. See Opp'n, Ex. H, ECF No. 7-8 at 11 (Order of the Immigration Judge). Third, DHS alleges that he entered the United States without inspection, admission, or parole. See id. at 4, 16 (DHS alleges that Petitioner entered the United States "without being inspected by an immigration officer" and further alleges he is a noncitizen "present in the United States who has not been admitted or paroled."). Fourth, Federal Respondents are detaining Petitioner Ramirez Hernandez under § 1225(b)(2)(A), and they do not assert that he is, or will be, subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Opp'n at 3. Fifth, Petitioner Ramirez Hernandez were most recently arrested well within the country's interior, not while arriving in the United States, as clearly demonstrated by the very documents Respondents provided. See Pet. at 11 (stating that Petitioner was arrested by ICE in *Hurricane, Utah*); Opp'n, Ex. H, ECF No. 7-8 at 3 (DHS's Form I-213 as to Petitioner Ramirez Hernandez confirms that this was the location of his arrest by ICE in April 2026).

As Jacobo-Ramirez Class members, Petitioners are entitled to enforcement of the declaratory judgment and vacatur afforded to the Class by this Court. Months ago, this Court declared that class members "are not subject to detention under § 1225(b)(2)(A)"; instead, "they are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations," which supply a suite of procedural protections. See Jacobo-Ramirez, 2026 WL 879799, at *33. This statutory interpretation—as it relates to the applicable statutory provision authorizing detention of Class Members—has since been explicitly adopted by the Ninth Circuit and is now binding on this Court and Respondents. See Rodriguez Vazquez, 2026 WL 2196424, at *3 ("[W]e conclude that [noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)."). Because Federal Respondents' only asserted basis for detaining Petitioners is § 1225(b)(2)(A), see generally Opp'n, their ongoing detention is therefore unlawful under the INA, as set forth in Rodriguez Vazquez, and this Court's class-wide declaratory judgment.

## III. REMEDY

Based on the record before it, the Court finds that Petitioners have been subjected to arbitrary and erroneous detention in violation of their statutory rights, as well as the Jacobo-Ramirez judgment. Thus, the Court's task is to determine the appropriate remedy for these violations. See Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) (citation omitted) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice require . . . ."); Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243) (same). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

As previously stated, Respondents have asserted that 8 U.S.C. § 1225(b)(2)(A)—and its associated procedures, or rather, lack thereof—governs Petitioners' detention. Respondents have explicitly disavowed any reliance on 8 U.S.C. § 1226(a), including its implementing regulations and associated procedures, as the authority that governs Petitioners' detention, despite numerous rulings from this Court—and six circuit courts—that reach the opposite conclusion. See Jacobo-

Ramirez, 2026 WL 879799, at *34–35 (collecting cases); see also generally Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Rojas v. Olson, --- F.4th ---, 2026 WL 2198315 (7th Cir. July 30, 2026); Rodriguez Vazquez, 2026 WL 2196424 (9th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026). The Court thus finds that Respondents have relied upon unlawful statutory authority for Petitioners' arrest and continued detention with no indication that they have applied the proper detention authority, 8 U.S.C. § 1226(a), or the procedures required therein, as to Petitioners.

Moreover, the Court finds that, to the extent Respondents have afforded Petitioners *some* procedures associated with § 1226, it is clear from the record that Respondents have admittedly not complied with the regulations in full, as required by the statute, its implementing regulations, and this Court's declaratory judgment.[4] See Jacobo-Ramirez, 2026 WL 879799, at *31; see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201–1202 (9th Cir. 2022). To the contrary, Federal Respondents have conceded—in both sworn interrogatories and open court—that they are not conducting initial custody determinations (one such procedure) or issuing Form I-286 notices of initial custody determinations to Class Members as a matter of policy. See Hr'g Tr. at 17:22–20:10, Jacobo-Ramirez, No. 2:25-cv-02136-RFB-MDC (D. Nev. June 1, 2026) (ECF No. 157).

The government has openly defied Jacobo-Ramirez and the mandates it set forth for months, repeatedly asserting this rejected detention authority to justify their practice of indiscriminately detaining noncitizens like Petitioners. Now, that "authority," as applied to Petitioners, has been squarely rejected by the Ninth Circuit. See Rodriguez Vazquez, 2026 WL 2196424, at *10–26. On that basis, the Court finds Respondents have failed to identify any lawful authority that permits Petitioners' continued detention when called to do so by this Court. Thus,

---

[4] To the extent Respondents assert the bond hearings held for petitioners in this case foreclose relief, the Court incorporates by reference, as if it were set forth in full herein, its decision in Sanchez Sandoval v. Blanche, No. 2:26-cv-01387-RFB-NJK, 2026 WL 1803675 (D. Nev. June 23, 2026) (footnote omitted) ("Since Petitioner's . . . detention without appropriate procedures was unlawful . . . , the subsequent bond hearing did nothing to address this unlawful conduct. Respondents cannot cure [their] violations by conducting a *post hoc* bond hearing."). Moreover, as Respondents have disavowed reliance on § 1226 and its implementing regulations and procedures, it is unclear what statute—and associated standards, burdens or procedures—apply to such a legally untethered "bond hearing" proceeding.

immediate relief is the sole appropriate remedy.

The Court also finds, based upon Respondents' history[5] of conduct with respect to these cases, it must adopt additional equitable remedies to ensure that Federal Respondents abide by the appropriate statutory authority, implementing regulations, and procedures.[6] Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks to (re)detain Petitioners under § 1226(a), Federal Respondents must provide them with *pre-deprivation* bond hearings wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing where the government was required to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community."); Gonzalez-Juarez v. Bondi, 137 F.4th 996, 1003 (9th Cir. 2025) (describing Martinez). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioners' rights to date.

///

///

///

///

---

[5] To elaborate, Federal Respondents have engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters. These violations include, *inter alia*: removing petitioners from the District of Nevada; failing to release petitioners as ordered; disregarding deadlines; failing to provide constitutionally adequate bond hearings; and imposing unlawful release conditions. See, e.g., Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).

[6] The Court adopts this additional equitable remedy, in part, as a means of safeguarding Petitioners' due process rights. The Ninth Circuit has, when deciding a facial challenge to 8 U.S.C. § 1226(a) brought under the Fifth Amendment's Due Process Clause, recognized that § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty. Rodriguez Diaz, 53 F.4th at 1196. "[The Ninth Circuit] in fact cited § 1226(a)'s procedures as a reference point for what [the Ninth Circuit] believed should be required under [§§ 1225(b), 1226(c), and 1231(a)(6)]." Id. at 1202. Because Petitioners have also raised a due process challenge to their detention, the Court finds it appropriate to ensure that those rights are protected moving forward.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioners' Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioners from detention on personal recognizance on **August 1, 2026,** between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioners (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioners' liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents must **RETURN** Petitioners' personal property—including all personal identification and/or employment authorization documents—upon their release.

**IT IS FURTHER ORDERED** Respondents may not re-detain Petitioners during the pendency of their current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under the INA and its implementing regulations. To the extent the government seeks to detain Petitioners under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **August 4, 2026,** confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioners' releases; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioners' personal property.

///

///

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioners may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** July 31, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**